# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                                    Criminal No. 12-172 SRN/AJB

                          Plaintiff,

v.                                                           **REPORT AND RECOMMENDATION**

(1)    Michael Brooks Bynum, and
(3)    Rayshawn Earl James Brown,

                          Defendants.


            Julie E. Allyn, Esq., and Surya Saxena, Esq., Assistant United States Attorneys,
                 for the plaintiff, United States of America;
            Heather Beugen, Esq., and Joseph Kaminsky, Esq., for defendant Michael Brooks
                 Bynum; and
            Josiah Lamb, Esq., and Daniel M. Scott, Esq., for defendant Rayshawn Earl
                 James Brown.


            This action came on for hearing before the Court, Chief Magistrate Judge Arthur

J. Boylan, on August 13, 2012, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis,

MN   55415.  Testimony was presented and exhibits were received at the hearing with regard to

suppression of statements and suppression of evidence obtained by search and seizure.

            Based upon the file and documents contained therein, along with testimony and

exhibits presented at hearing, the magistrate judge makes the following:

## FINDINGS

            **April 3, 2012, Vehicle Stop and Arrests.**  St. Paul Police Officer Nicholas

Schafer was on patrol duty in downtown St. Paul on the morning of April 3, 2012, when he

received a dispatch report of a robbery in progress at the West Seventh Pharmacy at 1106 West

Seventh St.  The dispatch advised officers to watch for a 1990's model red Cadillac automobile

and also indicated that two persons had been seen leaving the pharmacy.  Officer Schafer was driving a gray patrol car that was unmarked except for a small right side door badge.  As he proceeded westbound on Seventh St. the officer observed a red Cadillac going in the opposite direction in the area of Toronto St., approximately 3-4 blocks northeast of the robbery scene.  The Cadillac was pulled over to the side of the street as the officer approached with the squad car lights and siren activated, but then continued to proceed east bound when the squad car passed.  Officer Shafer promptly made a U-turn to follow the Cadillac.

Prior to making the U-turn the officer saw only a driver in the Cadillac.  After turning around he observed the head of someone who appeared to be hiding on the front passenger side of the Cadillac.  The officer followed as the vehicle turned north on Webster St.  On Webster the Cadillac pulled to the right side and stopped, and two passengers got out on the passenger side of the car and ran into the residential area.  No traffic offenses had been observed.  One of the passengers was seen going east/northeast towards Jefferson Ave.  Officer Schafer sent a radio message regarding the vehicle stop and passenger flight.  The officer initially began to chase the passengers but promptly went back to the Cadillac where the driver remained inside the car.  Meanwhile, Officer Colver arrived to assist.  The Cadillac driver, defendant Michael Bynum, told the officers that he was unable to walk.  The officers were aware that firearms had been used in the drug store robbery and Bynum was therefore pulled from the vehicle out of concern that he might have a firearm.  The driver was handcuffed and pat searched while on the ground.  Officer Schafer found a wad of cash on the driver's person.  The vehicle was not searched at that time.

Mr. Bynum was taken into custody and an ambulance was called to transfer him

to a hospital.  Officer Schafer followed the ambulance.  The officer was advised that Bynum had been known to hide contraband on his person and Schafer therefore conducted another body search of Mr. Bynum at the hospital.  A bag of leafy substance, believed to be marijuana, was discovered in the defendant's underwear.  Bynum was subsequently transferred to the police station where he was booked.  He was strip searched at the jail and his clothing was taken.

**Rayshawn Brown Apprehension.**  The two individuals who had robbed the pharmacy had been described by dispatch as males wearing black jackets, one of whom had kinky or dreadlock styled hair.  This description met that of the two persons seen running from the Cadillac.  Upon the report of the vehicle stop and passenger flight, additional officers converged in the area to establish a crime area perimeter for the purpose of apprehending one of the fleeing individuals.[1]  St. Paul Police Officer Rigo Aguire and Officer Zane Holter joined in the search upon hearing multiple dispatch reports regarding the Cadillac vehicle stop and the passengers' flight from the car.  Officer Aguire had heard the description of a suspect being a skinny black male and went to the area of Colborn St. and Jefferson Ave. (Hrg. Ex. 13).[2]  Additional officers were located on Seventh St., Erie St., and at a nearby railway yard.  Also, one or more police canines were involved in the search.

While at a perimeter location Officer Aguire observed a vehicle turn into the driveway of the residence at 367 Colborn St.  Shortly thereafter a man emerged and walked out

---

[1]  The initial complaint in this matter states that a co-defendant, Ray Brown, was apprehended shortly after he was seen running from the Cadillac.  Ray Brown did not participate in the criminal motions hearing and specific or detailed evidence regarding his involvement in this matter was not presented at the hearing.

[2]  Area street map.

from the same driveway. The man was a thin black male, approximately 5 foot, 4 inches tall, with braided or dreadlocked hair. He was wearing a black and white sweatshirt and had some foliage on his clothes. The physical description and clothing matched that of the suspect being sought. The man was stretching his arms and yawning, and when he encountered Officers Aguire and Holter he asked "What's going on?"

The suspect, identified as defendant Rayshawn Brown, was told to stop and place his hands on this head. He complied with the instructions and a pat search was conducted. Officer Aguire asked what he was doing here, to which the defendant stated that he was homeless and had been there for three days. St. Paul Police Officer Antillia had seen the initial flight from the Cadillac, and he now arrived in a squad car and stated, "that's him." Officer Holter went to speak with the Colborn St. resident who had driven into the driveway and parked in a rear detached garage. The resident had just returned with groceries when the defendant appeared at the door and asked for help. The resident stated she did not know the man.

St. Paul Police Officer Ronald Lehner had also responded to the robbery-in-progress dispatch. When he arrived at the area in a marked squad car Officer Lehner was aware that a vehicle had been stopped, at least one person was in custody, and someone was hiding in the area. Lehner joined Officer Antillia and others on Colborn St., and he saw defendant Rayshawn Brown walking out approximately one hour after the crime area perimeter was established. Officer Lehner placed Mr. Brown in the back seat of his squad car after conducting a second pat down search and the officer asked and was provided the defendant's name, date-of-birth, and height and weight. The defendant again stated that he was homeless. When the officer asked why he smelled so bad, the defendant stated that he had been staying and sleeping

under a porch for the past three days.  Defendant Rayshawn Brown was not told he was under arrest and was not given the <u>Miranda</u> rights advisory when he was placed in the squad car, though he was in handcuffs and detained at the time.  He was transported to the jail, booked for probable cause robbery, and placed in a cell.

**Interview Statements**

St. Paul Police Sgt. Ronald Jeffrey conducted interviews of defendants Rayshawn Brown and Michael Bynum on April 23, 2012, after they were booked in the jail.  Sgt. Jeffrey was aware of nine recent metropolitan area pharmacy robberies, including two robberies in St. Paul, Minnesota, and he was also aware that a GPS tracker had been placed on the red Cadillac used by Michael Bynum, based upon the suspected use of the vehicle in a St. Louis Park, Minnesota, drug store robbery.  He had specifically been advised that the Cadillac had been tracked going directly from Bynum's residence to the West Seventh Pharmacy on April 3, 2012.

**Rayshawn Brown.**  Sgt. Jeffrey met with defendant Rayshawn Brown for an interview conducted at the Ramsey County Law Enforcement Center on April 3, 2012.  St. Louis Park Police Officer Matt Reilly was also present and was involved in the investigation based upon suspicion of the defendant's participation in the earlier St. Louis Park, Minnesota, pharmacy robbery.  The officers were in plain clothes and were unarmed.  Prior to questioning Sgt. Jeffrey read the defendant his rights from a pre-printed statement of rights form (Hrg. Ex. 1).  Defendant Rayshawn Brown acknowledged each of his rights orally, and he also initialed each of the rights on the form, including the right to remain silent, the right to have an attorney present, and the right to appointed counsel.  Defendant Brown executed the form and Sgt. Jeffrey signed the form as a witness.  The interview was audio recorded (Hrg. Ex. 2) and lasted

approximately 36 minutes.  No threats or promises were made to induce the defendant's cooperation; the defendant was not impaired by drugs or alcohol; and the defendant made no request for the assistance of an attorney or that the interview cease.  Mr. Brown understood the questions and his responses were appropriate to the questions.

        **Michael Bynum.**  Sgt. Jeffrey also met with defendant Michael Bynum at the Ramsey County Law Enforcement Center for an interview on April 3, 2012.  Again, St. Louis Park Police Officer Matt Reilly was present and was involved in the investigation based upon suspicion of the defendant's participation in the earlier St. Louis Park, Minnesota, pharmacy robbery.  The officers were in plain clothes and were unarmed.  Prior to questioning Sgt. Jeffrey read the defendant his rights from a pre-printed statement of rights form (Hrg. Ex. 3).  Defendant Bynum acknowledged each of his rights orally, and he also initialed each of the rights on the form, including the right to remain silent, the right to have an attorney present, and the right to appointed counsel.  Mr. Bynum executed the form and Sgt. Jeffrey signed the form as witness.  The interview was audio recorded (Hrg. Ex. 4) and lasted approximately 10 minutes.  No threats or promises were made to induce the defendant's cooperation and the defendant was not impaired by drugs or alcohol.  Questioning ended upon the defendant's indication that he might desire the assistance of an attorney and his refusal to expressly waive his right to the presence of counsel.  Mr. Bynum understood the questions and his responses were appropriate to the questions.

## Search Warrants

        **Bynum Residence.**  On April 3, 2012, Hennepin County District Court Judge James Swenson issued a warrant to search a particularly described residential location in

Minneapolis, Minnesota, including any garages and storage areas. (Hrg. Ex. 5). The location is further identified in the supporting affidavit as the residence of Michael Bynum. The search warrant identified the objects of the warrant as particularly described sweatshirts, head coverings, firearms and ammunition, prescription medications, shoes and boots, and documents relating to pharmacy robberies, including maps, receipts, drugs delivery schedules, photos and diagrams of pharmacies. The warrant was issued on the basis of probable cause evidence asserted in the Affidavit of St. Louis Park Police Investigator Dennis Hagen, including evidence obtained from a citizen witness regarding a St. Louis Park pharmacy robbery, information associating defendant Bynum with a particular vehicle seen in the area of robberies, surveillance information, GPS tracking evidence, and evidence obtained as result of the April 3, 2012 arrests. The state search warrant authorized nighttime search and unannounced entry.

      **Cadillac Search Warrant.** On April 3, 2012,[3] Ramsey County District Court Judge J. Thomas Mott issued a warrant to search a particularly described Cadillac automobile that had been impounded following the robbery of the West Seventh St. Pharmacy in St. Paul, Minnesota (Hrg. Ex. 6). The car is described in the supporting affidavit as a vehicle used in the commission of a crime and as being itself evidence of a crime. The search warrant identified the objects of the warrant as guns, ammunition, and shell casings; ownership papers; clothing; cell phones and their content; money and receipts; pharmacy identifying bags; prescription medications; and DNA samples. The warrant was issued on the basis of probable cause evidence asserted in the Affidavit of St. Paul Police Sgt. Michael Wortman, including evidence obtained

---

[3] The warrant is dated March 26, 2012, but the application is dated April 3, 2012, and the inventory states that the warrant was issued and executed on April 3, 2012.

in the investigation of the April 3, 2012, pharmacy robbery, including the vehicle stop and observation of persons fleeing from the vehicle and their actions. The warrant was executed the same day and evidence was seized pursuant to the warrant.

**DNA Warrants.** On April 4, 2012, separate warrants were issued by Ramsey County District Court Judge George Stephenson authorizing the seizure of DNA samples from defendant Rayshawn Brown (Hrg. Ex. 7) and Michael Bynum (Hrg. Ex. 8). Each search warrant specifically identifies the object of the warrant as a DNA sample from the indicated individual, a person located in St. Paul, Ramsey County, Minnesota, and the warrant further states that the subject is in custody. The DNA warrants were issued on the basis of information contained in the largely identical Affidavits of St. Paul Police Sgt. Michael Wortman wherein it was stated that the known DNA sample was requested for DNA comparison purposes.

**Cell Phone Warrants.** On April 4, 2012, Ramsey County District Court Judge George Stephenson issued a warrant authorizing the seizure of information relating to three specific cellular telephone numbers (Hrg. Ex. 12). The warrant was addressed to a certain identified cellular service provider (T-Mobile) and particularly requested subscriber information, activation dates, subscriber numbers and identities, account features, payment methods, call detail records, cell tower locations, SMS and MMS data, and electronic data associated with the account, from December 1, 2011, to the date of compliance. The warrant was issued on the basis of information contained the Affidavit of St. Paul Police Sgt. Michael Wortman. The affidavit described the underlying robbery at the West Seventh Pharmacy, as well as the subsequent vehicle stop and suspect apprehensions. The affidavit also stated that the cell phones associated with each of the phone numbers had been found in the vehicle that was

stopped on April 3, 2012.

On April 11, 2012, Hennepin County District Court Judge Gary Larson issued two separate warrants authorizing the seizure of cell phone information. One of the warrants (Hrg. Ex. 9) authorized the search and seizure of information contained on a particularly identified cellular smart phone and phone number, including call history, SMS and MMS data, photos and videos, internet activity and forwarded calls. The second warrant related to the same cell phone and phone number (Hrg. Ex. 10) and was addressed to a certain identified cellular service provider (Cellco Partnership, dba Verizon Wireless). The warrant particularly requested subscriber information, activation dates, subscriber numbers and identities, account features, payment methods, call detail records, cell tower locations, SMS and MMS data, and electronic data associated with the account, from December 1, 2012,[4] to the date of compliance. Both warrants were issued on the basis of information contained in the separate but substantially identical Affidavits of St. Louis Park Police Officer Matt Reilly. The affidavits described the armed robbery of a pharmacy in St. Louis Park, Minnesota, surveillance and citizen observations and reports regarding a suspect vehicle, GPS tracking information, the robbery at the West Seventh Pharmacy, and subsequent suspect arrests. The affidavits also stated that the subject phone was seized pursuant to execution of a search warrant at the suspect vehicle driver's residence, and the phone was also the subject of a pen registry warrant issued on March 30, 2012.

On May 9, 2012, Hennepin County District Court Judge Karla Hancock issued a

---

[4] The warrant application requested information from May 1, 2011, through the date of compliance and the warrant itself requested information from December 1, 2012, through the date of compliance.

warrant authorizing the seizure of information relating to a specific cellular telephone number (Hrg. Ex. 11). The warrant was addressed to a certain identified cellular service provider (Page Plus Cellular) and particularly requested subscriber information, activation dates, subscriber numbers and identities, account features, payment methods, call detail records, cell tower locations, SMS and MMS data, and electronic data associated with the account, from December 1, 2012, to the date of compliance.[5] The warrant was issued on the basis of information contained the Affidavit of St. Louis Park Police Officer Matt Reilly. The affidavit was substantially identical to the April 11, 2012, affidavits, therein describing the armed robbery of a pharmacy in St. Louis Park, Minnesota, surveillance and citizen observations and reports regarding a suspect vehicle, GPS tracking information, the robbery at the West Seventh Pharmacy, and subsequent suspect arrests. The affidavits also stated that the subject phone was seized pursuant to execution of a search warrant at the suspect vehicle driver's residence, and the phone was also the subject of a pen registry warrant issued on March 30, 2012.

Based upon the foregoing Findings, the magistrate judge makes the following:

## CONCLUSIONS

### Severance of Defendants

Severance of defendants is not required in this matter. Defendants Michael Bynum and Rayshawn Brown have made no particularized presentation to the court in support of their respective motions for severance of defendants, either in initial motions or at hearing. Two or more defendants may be charged in the same indictment if they are alleged to have

---

[5] The Page Plus Cellular warrant application and warrant (Hrg. Ex. 11) contains the same date discrepancies as the earlier Verizon application and warrant (Hrg. Ex. 10).

participated in the same transaction or series of incidents constituting an offense or offenses. Fed. R. Crim. P. 8(b). There is a preference in the federal system for joint trials of defendants who are indicted together. <u>Zafiro v. United States</u>, 506 U.S. 534, 113 S.Ct. 933, 937 (1993). The propriety of joinder under Rule 8 is a question of law, though relief from a legally permissible joinder may be obtained as an exercise of discretion on motion for severance due to prejudice, pursuant to Fed. R. Crim. P. 14. <u>United States v. Rodgers</u>, 732 F.2d 625, 628-29 (8th Cir. 1984). Availability of the Rule 14 remedy permits broad construction of Rule 8 in favor of initial joinder. <u>Id.</u> at 629.

The co-defendants in this matter have been indicted for aiding and abetting one another on charges of interference with commerce by robbery, robbery involving controlled substances, and two counts of possession of a firearm in furtherance of a crime of violence. Under these circumstances, the general rule in the Federal system is that the co-defendants should be tried together. The court may grant a severance of defendants if it appears that a defendant is prejudiced by a joinder of defendants at trial. Fed. R. Crim. P. 14. A court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." <u>Zafiro</u>, 113 S.Ct. at 938. With respect to joinder of defendants in this case, it has not been shown that severance of co-defendants is necessary to avoid risk of compromising any specific trial right to which each of them is entitled or is necessary to prevent the jury from making an unreliable judgment as to the guilt or innocence of each of them.

In their respective motions for severance defendant Rayshawn Brown asserts

improper joinder, difficulty in distinguishing the alleged acts of each defendant from those of the other, and admissibility or inadmissibility of evidence relating to co-defendants, and defendant Michael Bynum asserts prejudice based upon evidence that may be admitted with respect to a co-defendant. Neither motion describes the nature of the anticipated prejudice with particularity, and the present record in this case, including testimony produced at hearing, offers no obvious indication as to how either defendant is prejudiced by joinder with another defendant in this case, particularly to the extent necessary to overcome the preference for joinder of defendants. It is not patently apparent that a jury would be unable to distinguish and apply the evidence relating to one defendant from evidence relating to other defendants.

   The defendants in this case were properly joined under Rule 8 and there is no basis for severance. Decision on a Rule 14 motion for severance lies within the sound discretion of the trial court. <u>United States v. Robaina</u>, 39 F.3d 858, 861 (8th Cir. 1994). Rule 14 severance is a remedy for prejudice that may develop during trial. <u>Id.</u> at 861. Joinder of defendants in this case was not improper and severance is not required in light of the current record. <u>See</u> <u>United States v. Wadena</u>, 152 F.3d 831 (8th Cir. 1998).

**<u>Vehicle Stop and Arrests</u>**[6]

   The stop of the Cadillac in which defendant Michael Bynum was the driver and defendant Rayshawn Brown was a passenger on April 3, 2012, was not unlawfully made in violation either co-defendant's constitutional rights. Neither Mr. Bynum's arrest at the time of the stop, nor Mr. Brown's arrest approximately one hour later was an unlawful seizure of the

---

  [6] Neither defendant has directly asserted that the vehicle stop was unlawful but it has been generally alleged that searches and seizures were conducted without probable cause.

respective defendant's person.  Suppression of evidence on grounds that the stop was unlawful is not required.

Officer Shafer lawfully stopped the Cadillac being driven based upon probable cause to believe that an occupant of the vehicle was involved in the commission of an armed robbery.  When there is communication among officers, probable cause may be "based upon the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely on the information within the knowledge of the officer on the scene."  United States v. Morales, 238 F.3d 952, 954 (8th Cir. 2001)(quoting United States v. Horne, 4 F.3d 579, 585 (8th Cir. 1993)).

In this matter the vehicle stop was made on the basis of a dispatch report that a red Cadillac was involved in the very recent robbery.[7]  Officer Shafer observed a red vehicle within a few blocks of the crime scene as he responded to the dispatch and he observed a single occupant.  Immediately after turning around to follow the vehicle the officer observed another occupant who appeared to have been hiding in the front passenger side.  The Cadillac then turned onto a side street and stopped, and two passengers exited the car and fled the scene.  These circumstances are sufficient to establish reasonable suspicion for the vehicle stop and the flight of the passengers from the vehicle established probable cause for the arrest of vehicle occupants.  Suppression of evidence based upon either under unlawful vehicle stop or unlawful arrest is not required.  Moreover, statements and other evidence that may have been obtained

---

[7]  The determination by officers that a red Cadillac was in the area and involved in the pharmacy robbery was based upon the use of a GPS tracking device that had been attached to the vehicle pursuant to a warrant.  There has been no challenge to the GPS tracking warrant in this case.

subsequent to the stop and arrests were not the fruit of unlawful police actions, and suppression of evidence pursuant to the fruit of the poisonous tree doctrine is not required.  See  Wong Sun v. United States, 371 U.S. 471 (1963).

      **Person Searches.**  Defendant Michael Bynum was lawfully searched upon his removal from the Cadillac for purposes of public safety and the cash found on his person was not unlawfully seized.  Defendant Rayshawn Brown was lawfully searched incident to arrest and he was again lawfully pat searched for purposes of officer safety prior to being placed in a squad car for transfer.[8]  A subsequent search of defendant Bynum's person while he was detained at the hospital, during which presumed marijuana was discovered, was likewise not unlawful, and suppression of the material is not required.  Mr. Bynum might have been searched for contraband upon his initial arrest.  A search that might have been made incident to the arrest may properly be conducted at a place of detention.  United States v. Hambrick, 630 F.3d 742, 748 (8th Cir 2011) (citing United States v. Edwards, 415 U.S. 800, 803, 94 S.Ct. 1234 (1974).  To the extent that the search may be construed to have been a strip search, there is no evidence of abusive, overly intrusive, or unreasonable police conduct with regard to the scope, manner, or location of the search, as necessary to raise Fourth Amendment implications as to the conduct of the search. Id.  Defendant Michael Bynum's motion to suppress marijuana seized in the hospital search is not required.  As to defendant's assertion that the evidence is prejudicial and not relevant to the charges in this case, the issue is properly presented by motion *in limine* or in the context of trial.

**Statements**

------

    [8]  The record does not indicated that any evidence was seized as result of searches of the person of Rayshawn Brown.

**Bynum Interview.** Defendant Michael Bynum's statements to Sgt. Jeffrey and Officer Reilly in an interview conducted on April 3, 2012, were provided voluntarily and were not obtained in violation of the defendant's constitutional rights (Hrg. Ex. 4). The defendant was properly advised and was able to understand and comprehend his rights pursuant to <u>Miranda</u> as accurately presented to him from a written statement of rights form. (Hrg. Ex. 3). He was not subjected to force, threats, or promises in exchange for his statements. He effectively waived his right to remain silent and his right to the assistance of counsel, and the interview was promptly terminated and questioning ceased upon the defendant's indication that he wanted the assistance of an attorney. Upon considering the totality of circumstances, the court concludes that Mr. Bynum knowingly, intelligently, and voluntarily waived his right to remain silent and his right to have an attorney present during questioning prior to expressly requesting an attorney. Suppression of defendant's interview statements on April 3, 2012, is not required.

**Rayshawn Brown Interview.** Defendant Rayshawn Brown's statements to Sgt. Jeffrey and Officer Reilly in an interview conducted on April 3, 2012, were provided voluntarily and were not obtained in violation of the defendant's constitutional rights (Hrg. Ex. 2). The defendant was properly advised and was able to understand and comprehend his rights pursuant to <u>Miranda</u> as accurately presented to him from a written statement of rights form. (Hrg. Ex. 1). He was not subjected to force, threats, or promises in exchange for his statements. He effectively waived his right to remain silent and his right to the assistance of counsel. Upon considering the totality of circumstances, the court concludes that Mr. Brown knowingly, intelligently, and voluntarily waived his right to remain silent and his right to have an attorney present during questioning prior to expressly requesting an attorney. Suppression of defendant's

interview statements on April 3, 2012, is not required.

Defendant Rayshawn Brown's statements prior to and immediately after his arrest were not the product of police interrogation and were not obtained in violation of the defendant's constitutional rights. Officer Lehner's question as to why Mr. Brown smelled so bad was a rhetorical comment that was not stated for the purpose of obtaining incriminating evidence and other questions by Officer Lehner were posed for the permissible purpose of obtaining biographical information only. Suppression of statements made by Rayshawn Brown at or near the time of arrest is not required.

## Search Warrants

**Bynum Residence.** Evidence seized pursuant to a warrant to search a particularly described residential premises in Minneapolis, Minnesota (Hrg. Ex. 5) was not unlawfully obtained in violation of the constitutional rights of defendant Michael Bynum. The residence search warrant was issued on April 3, 2012, and was based upon sufficient probable cause as stated in the Affidavit of St. Louis Park Police Investigator Dennis Hagen and as determined by Hennepin County District Court Judge James Swenson. The warrant properly and sufficiently identified the location of the search and the items to be seized. The search warrant in this matter was lawfully issued and there is no requirement for suppression of evidence seized pursuant to the warrant.

**Cadillac Search Warrant.** Evidence seized pursuant to a warrant to search a particularly described vehicle presently located in St. Paul, Minnesota (Hrg. Ex. 6) was not unlawfully obtained in violation of the constitutional rights of defendant Michael Bynum. The vehicle search warrant was issued on April 3, 2012, and was based upon sufficient probable

cause as stated in the Affidavit of St. Paul Police Sgt. Wortman and as determined by Ramsey County District Court Judge J. Thomas Mott. The warrant properly and sufficiently identified the location of the search and the items to be seized. The search warrant in this matter was lawfully issued and executed and there is no requirement for suppression of evidence seized pursuant to the warrant.

       **DNA Warrants.** Evidence seized pursuant to separate warrants to seize DNA samples from the person of Rayshawn Brown (Hrg. Ex. 7) and Michael Bynum (Hrg. Ex. 8) was not unlawfully obtained in violation of the constitutional rights of the respective defendant. The warrants were issued on April 4, 2012, and were based upon sufficient probable cause as stated in the Affidavit of St. Paul Police Sgt. Michael Wortman and as determined by Ramsey County District Court Judge George Stephenson. Each warrant properly and sufficiently identified the person and the subject of the seizure and stated a nexus between the object of the warrant and an alleged felony offense. The DNA search warrants in this matter were lawfully issued and there is no requirement for suppression of DNA evidence seized pursuant to either warrant.

       **April 4, 2012, Cell Phone Search Warrant.** Evidence obtained pursuant to a warrant to obtain service provider information relating to 3 expressly stated cell phone numbers associated with 3 cell phones obtained pursuant to the search of the Cadillac automobile (Hrg. Ex. 12) was not unlawfully obtained in violation of the constitutional rights of a defendant in this action. The warrant was issued on April 4, 2014, and was based upon sufficient probable cause as stated in the Affidavit of St. Paul Police Sgt. Mike Wortman and as determined by Ramsey County District Court Judge George Stephenson. The warrant properly and sufficiently identified the objects of the seizure and the data to be seized. The warrant further established a

nexus between the object of the warrant and the alleged offense in this case in stating that the cell phones were found in the seized vehicle that was driven by defendant Bynum in close physical and time proximity to the West Seventh Pharmacy robbery. The April 4, 2012, cell phone search warrant in this matter was lawfully issued and there is no requirement for suppression of evidence seized pursuant to the warrant.

**April 11, 2012, and May 9, 2012, Cell Phone Search Warrants.** Suppression of evidence obtained pursuant to separate April 11, 2012, warrants to search a particularly identified cell phone (Hrg. Ex. 9) and to obtain service provider information relating to the phone (Hrg. Ex. 10), and evidence obtained pursuant to a third warrant issued May 9, 2012, to obtain service provider information relating to the same phone from another provider (Hrg. Ex. 11), is not required. Each of the warrants properly and sufficiently identified the objects of the seizure and the data to be seized. However, the warrants are all based upon essentially the same probable cause statement contained in the affidavit Agent Matt Reilly and the statement contains no particularized facts that establish a nexus between the phone and the West Seventh Pharmacy robbery or any other criminal offense. The mere statement that the subject cell phone was found in the search of defendant Bynum's house, a suspect was known to use the phone, and the phone was the subject of a pen register warrant does not establish a nexus between the object of the warrant and the alleged offense in this case. "[A] search is supported by probable cause if <u>facts are shown</u> making it likely that evidence of a crime will be found in the place to be searched." <u>United States v. Koons</u>, 300 F.3d 985, 990 (8th Cir. 2002) (emphasis added). The affidavit in this instance contains no such nexus facts, either directly or by reasonable inference, and probable cause is therefore lacking.

**Good Faith.**  Nonetheless, the court concludes that the good faith exception under United States v. Leon,  468 U.S. 897, 923, 104 S.Ct. 3405, applies with respect to the April 11, 2012, and May 9, 2012, cell phone warrants.  "[A]bsent allegations that the [issuing judge] was not neutral, 'suppression is appropriate only if the officers were dishonest or reckless in preparing the affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause."  United States v. Formaro, 152 F.3d 768, 771 n.4 (8th Cir. 1998)(citing United States v. Fulgham, 143 F.3d. 399, 401-02 (8th Cir. 1998)(quoting Leon 468 U.S. at 926).  There is no claim in this matter that the issuing judge was not neutral, and there has been no request for a hearing or review under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674 (1978), to consider whether the affidavit contains deliberate or reckless misrepresentations, either by omission or misstatement.  Formaro at 771.  However, the defendant has asserted that the affidavits in this instance "were so lacking in probable cause that the executing officers could not reasonably rely upon them."  Leon, 468 U.S. 897, 905.  The court disagrees.  While the absence of particularized facts to establish a nexus between the phone and criminal activity is notable, the prior issuance a court-authorized pen register as referenced in the affidavit is sufficient to establish the officer' good faith belief that a connection between the phone and criminal activity was stated.  Furthermore, the affidavit reference to the prior residence search warrant (Hrg. Ex. 5), wherein the seizure of photographs and other materials relating to execution or planning of a pharmacy robbery was authorized, is indicative of the executing officers reasonable belief that probable cause for the cell phone searches was established.

**Multiplicity.**  Dismissal of either Count 3 or Count 4 of the indictment on grounds that the charges are multiplicitous is not required.  Defendant Rayshawn Brown moves

for dismissal of Counts 3 and 4 of the indictment on a claim that the indictment counts are multiplicitous. An indictment is multiplicitous when it charges the same offense in two counts. United States v. Chipps, 410 F.3d 438, 447 (8th Cir. 2005). The mischief that may result from a multiplicitous indictment is the possibility that the defendant could be subjected to double punishment for the same crime in violation of the Fifth Amendment prohibition against double jeopardy. Id. (citations omitted). Counts 3 and 4 each allege possession of the same firearm in furtherance of a crime of violence, though each references a different crime of violence as stated in previous counts. In opposing dismissal for multiplicity, the government insists that Counts 3 and 4 relate to different predicate offenses requiring proof of separate facts, and the indictment therefore does not violate the prohibition against multiplicity. United States v. Sandstrom, 594 F.3d 634, 656-57 (8th Cir. 2010).

Count 3 of the indictment alleges possession of a firearm in furtherance of a crime of violence, Hobbs Act robbery, and Count 4 alleges possession of a firearm in furtherance of a crime of violence, controlled substance crime. In deciding whether an indictment which charges separate counts relating to the same act or transaction is multiplicitous, "the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." United States v. Holloway, 128 F.3d 1254, 1257 (8th Cir. 1997)(quoting Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180 (1932). The indictment in this matter charges the defendant with two separate counts of possession of a firearm in furtherance of a crime of violence, with each charge relating to a different crime of violence. Though there may be substantial overlapping evidence, each count requires proof of facts that is not required with respect to the other charge and the indictment is therefore

permissible under the Blockburger test.

Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes the following:

## RECOMMENDATION

The Court **hereby recommends** that:

1. Defendant Rayshawn Earl James Brown's Motion for Severance of Defendants be **denied** [Docket No. 52];

2. Defendant Rayshawn Earl James Brown's Motion to Dismiss Counts 3 and 4 of the Indictment as Multiplicitous be **denied** [Docket No. 54];

3. Defendant Rayshawn Earl James Brown's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be **denied** [Docket No. 59];

4. Defendant Rayshawn Earl James Brown's Motion for Suppression of Statements, Admissions or Answers be **denied** [Docket No. 61];

5. Defendant Michael Brooks Bynum's Motion for Severance be **denied** [Docket No. 63];

6. Defendant Michael Brooks Bynum's Motion to Suppress Statements, Admissions and Answers be **denied** [Docket No. 65]; and

7. Defendant Michael Brooks Bynum's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be **denied** [Docket No. 66].

Dated:      August 30, 2012     

                                         s/Arthur J. Boylan                              
                                         Arthur J. Boylan
                                         United States Chief Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before September 14, 2012.